UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-0119 (GK) |
| | : | |
| v. | : | |
| | : | |
| TROY LEWIS, | : | |
|     Defendant | : | |
| | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COUNT ONE OF THE INDICTMENT FOR INSUFFICIENCY**

The United States Attorney, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's Motion to Dismiss Count One of the Indictment for Insufficiency. As grounds for this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing on the motion.

I.    PROCEDURAL BACKGROUND

On May 2, 2007, a federal grand jury indicted the defendant, Troy Lewis, on one count of Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b) (Count One) and one count of Traveling with the intent to Engage in Sex with a Minor, in violation of 18 U.S.C. § 2423(b) (Count Two).

II.    FACTUAL BACKGROUND

On April 23, 2007, a Metropolitan Police Department detective working in an undercover capacity entered an Internet chat room known to him to be used by individuals who talk about having sex with young children. The detective, using the screen name, "daughterlover_Maryland" was contacted in the chat room by the defendant who used the name

"pudendal518". The defendant asked the undercover officer whether he in fact had a daughter and the undercover said that he did.

The defendant and the undercover officer then engaged in a private on-line chat, that is one not public to other individuals in the chat room, from approximately 3:43 p.m. until 5:18 p.m. and again from approximately 6:20 p.m. to 6:29 p.m. During the initial conversation, the undercover officer indicated that he had limited sexual contact with his fictitious daughter, and that he had sexual intercourse with a ten-year-old girl whom he described as the daughter of a crack-addicted prostitute. The officer sent a photograph of a young girl to the defendant, whom he called "K," and said that he was able to have sex with the child because he paid her mother money.

During the course of the on-line conversation, the defendant expressed interest in the undercover's purported relationship with the child. At one point the defendant asked the undercover where he thought the defendant should go that afternoon for oral sex and the undercover asked whether he wanted "anyone or preteen"; the defendant said he doubted that what he wanted was available. The undercover then indicated that he might consider sharing the ten-year-old and that he had discussed that with others, but that he didn't want to get caught in a trap and that the other individuals did not sound sincere anyway. The defendant responded: "oh, I am sincere as f. . . . Kinda skittish though."

At another point during the conversation, the defendant and the undercover agreed to meet in a public place prior to the meeting with the child. The defendant even asked about what the child's mother would think concerning someone other than the undercover's being with the child, and he and the undercover discussed specific sex acts and whether the defendant would use

2

a condom while engaging in sex with the child.

The undercover indicated that he did not know whether he could arrange to have the child available that evening and would contact the defendant later. After approximately an hour he contacted the defendant on-line and said that the child's mother could meet with the child later that evening or the following evening. The defendant stated he was available that night and arranged to meet the undercover at a bar in Washington, D.C. At approximately 8:10 p.m., the defendant arrived at the agreed upon location. After a short conversation with the undercover officer in which they confirmed each others on-line identities, he was arrested.

III.    LEGAL ANALYSIS

The defendant moves to dismiss count one of the indictment, arguing that there is insufficient evidence to establish that the defendant attempted to coerce and entice a minor. Citing the chat that he contends was a 'fantasy' between the defendant and the undercover, the lack of money, condoms, toys, lubricants, the fact that defendant did not send a picture of himself to the undercover, and that no request was made that the child be present at the bar, defendant contends that the government's evidence fails to establish that the defendant engaged in conduct which would constitute a substantial step toward the commission of a crime. See Mot. Dismiss at 2 and 3.[1] The defendant's position, however, is not supported by the law. Section 2422(b) states in relevant part:

> Whoever, using the mail or any facility or means of interstate commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal

---

[1] Defendant also argues that the fact that he possessed child pornography does not add to the sufficiency of the evidence. Indeed, the government intends to present that evidence to show defendant's unusual sexual preference for little girls.

offense, or *attempts to do so,* will be fined [and imprisoned].18 U.S.C. Section 2422(b) (emphasis added).

In United States v. Murrell, 368 F.3d 1283, 1286 (11th Cir. 2004), the defendant made a deal with the purported father to have sex with the father's minor daughter. The Court affirmed the lower court's denial of defendant's motion to dismiss the indictment based on the fact that there was no actual minor involved. On appeal, the Court set forth the requirements to sustain a conviction for the crime of attempt. The Court held that the government need only prove "(1) that the defendant had the specific intent to engage in the criminal conduct for which he is charged and (2) that he took a substantial step toward commission of the offense." Id at 1286. Indeed, the Court explained that the crime is the "persuasion, inducement, enticement, or coercion of the minor rather than the sex act itself." Id at 1286. See also United States v. Bailey, 228 F.3d 637(6th Cir. 2000)(where Court held that sexually explicit language in messages sent to minors without actually traveling to meet them constituted a substantial step and held that a "conviction under [2422(b)] only requires a finding that the defendant had an intent to persuade or to attempt to persuade.") Similarly, in Yost v. United States, 479 F.3d 815(11th Cir. 2007), the Court found that there was a substantial step even though the defendant who sent sexually explicit messages to purported underage girls, and arranged to meet them, did not even travel to meet one of the girls. In that case the Court held that the fact that the defendant did not meet one of the purported girls, did not preclude a finding of a substantial step. The Court found that "the totality of Yost's actions convinces us that a reasonable jury could have found Yost committed a substantial step." Id. at 820. See also United States v. Thomas, 410 F.3d 1235, 1246 (10th Cir. 2005) where Court found that defendant took substantial step toward inducement by making

arrangements to meet minor, even though he was stopped by agents before he arrived at the supposed meeting place.)

In the case at bar, not only did the defendant send sexually explicit messages, making it clear that he wanted to have sex with a ten-year-old child, the defendant traveled to meet the undercover. Indeed after the undercover described the little girl that could be made available to the defendant for sex, the defendant remarked, "and mom's okay with it I guess? $ always helps . . . I wonder if she still limits [the little girl] to you . . . but she's a coke- head. she'll be hard-up for cash at some point and remember where the easy money is . . . " After the undercover explains that he is concerned about people being insincere, the defendant assures him, "oh, I'm sincere as f...Kinda skittish, though..." When the undercover explains that he pays the mother between 100 and 150 dollars, the defendant responds, "pretty f... reasonable, I think . . . I'd be tempted to add a little more sometimes . . . " Even after the defendant tells the undercover that " . . . this is merely a fantasy discussion and any meeting would be to discuss this fantasy in which neither of us would ever actually indulge," the defendant asks the undercover, "what do you think [the little girl's] mom would think about someone else being involved?" When the undercover tells the defendant to " . . . just let me know [I] feel comfortable with u so far at this point . . . ," the defendant responds: "let you know what? I'm up for us meeting in public soon. Remember, I'm horny now, LOL." The defendant adds, " . . . so you should set something u for tonight or tomorrow night. You and I meet somewhere else. If we're comfortable, we can go from there. If we don't click, you can still have your hookup later on" When the undercover calls defendant back an hour later, and asks if he would prefer tonight or tomorrow, the defendant said, "tonight would work." The defendant then left his home in Maryland, traveled to D.C., and met the

undercover at the prearranged meeting place. As the Court in Yost , a case where the defendant did not travel to meet one of the victims, observed, "these acts taken as a whole, strongly corroborate [defendant's] culpability and provide clear evidence that his conduct was criminal." Id. at 820. In a case where the defendant actually traveled, it is clear that defendant took a substantial step.

Accordingly, defendant's motion should be denied.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY

By:  _____
        JULIEANNE HIMELSTEIN
        Assistant United States Attorney
        555 4th Street, N.W.
        Washington, D.C.  20001
        (202) 514-8203

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing was served by mail upon the attorney for the defendant, Shawn Moore, Esquire, 625 Indiana Avenue, N.W., #550, Washington, D.C. 20004, on this _____ day of June 2007.

_____
JULIEANNE HIMELSTEIN