UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 07-119 (GK) |
| | : | |
| TROY LEWIS, | : | |
|       Defendant. | : | |

**<u>GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING</u>**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

**I.**   **<u>BACKGROUND</u>**

The defendant comes before the court to be sentenced pursuant to his conviction by a jury of one count of Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), and one count of Traveling with the Intent to Engage in Sex with a Minor, in violation of 18 U.S.C. § 2423(b). The facts underlying these offenses are as follows:

On Monday, April 23, 2007, at approximately 3:40 in the afternoon, the defendant initiated an on-line conversation with someone whom he thought shared his sexual interest in children. The defendant – whose screen name that day was "subtle discrete" – sent a question over the internet to someone with the username "daughterlover_maryland." In fact, "daughterlover_maryland" was a fictitious user created by a Metropolitan Police Department detective acting in an undercover capacity.

1

The defendant began the conversation by inquiring whether "daughterlover_maryland" had a daughter. The undercover officer volunteered that his daughter was eleven. The defendant replied "damn. Perfect age."

The defendant proceeded to chat with the undercover officer on and off for almost three hours that Monday afternoon. Early on in their chat, the undercover officer disclosed that he had access to another child – a 10-year old girl that he called "K." The defendant responded: "you can imagine how envious I am," and pressed for additional details about the relationship. The undercover claimed that K was the daughter of a crack-addicted woman who accepted money from him in return for letting him have sexual access to her child. At 4:05 p.m., the undercover officer sent the defendant a picture titled "me with lil k." The defendant responded "Damn, she's sweet."

When, later in the conversation, the undercover offered the defendant the chance to meet the child he called "K," the defendant replied that he was as "sincere as fuck" about meeting her. The defendant asked the undercover officer whether the child's mother would permit someone other than the undercover to be with the child. He pushed for a meeting that very night, because he was horny. And the defendant discussed whether he would need to wear a condom with "K."

By the end of the chat, there was a plan in place. The defendant had provided the undercover officer with his name and cell phone number, and had agreed to meet him at 8 p.m. at the Irish Channel Pub at the corner of 5th and H Streets, NW, in Washington, DC. At approximately 8:10 p.m., the defendant arrived at the agreed upon location. After a short conversation with the undercover officer in which they confirmed each other's on-line identities, the defendant was arrested.

On April 24, 2007, a search warrant issued by the United States District Court for the District of Maryland was executed at the defendant's residence in Silver Spring, Maryland. In a dresser drawer in the bedroom used exclusively by the defendant, agents found a CD containing still and video images of child pornography wrapped inside a pair of men's underpants. The images were exclusively of prepubescent female children ranging in age from approximately three years-old to approximately ten years-old. The videos – which totaled more than 45 minutes of screen time – showed children engaging in oral, anal, and vaginal intercourse with adult males. A diaper is clearly visible in the lower front of the screen during one video. Another video depicted men ejaculating on approximately fifteen girls, several of whom appeared to be as young as three to four years of age.

Also recovered from the defendant's bedroom was a laptop computer. During a forensic analysis of this computer, the photograph of "K" that the undercover officer had sent to the defendant was found. Also on the computer were additional images of young girls who appeared to be between the ages of 8 and 13 years old. These images depict child erotica, that is children in sexually suggestive poses, such as girls taking off their trainer bras. The images had sexually suggestive titles, such as: "9 year old Stephanie Taking off her Bra", "Boom and her Sucker", and "Yes, lick it Boom!".[1]

---

[1] Excerpts of the images of child pornography and child erotica seized from the defendant were presented at trial; the Court reviewed these images and videos in their entirety pursuant to its ruling on their admissibility at trial.

## II.   SENTENCING CALCULATION

A.   Statutory Maximums

Count 1: A violation of Title 18, United States Code, Section 2422(b) carries a minimum sentence of 10 years and a maximum sentence of life in prison, a fine of $250,000, and a term of supervised release of between five years and life. See 18 U.S.C. §§ 2422(b), 3571(b)(3), 3583(k).

Count 2: A violation of Title 18, United States Code, Section 2423(b) carries a maximum sentence of 30 years in prison, a fine of $250,000, and a term of supervised release of between five years and life. See 18 U.S.C. §§ 2422(b), 3571(b)(3), 3583(k).

B.   Sentencing Guidelines Calculation

Both counts of conviction are grouped in this case because the offenses involve the same victim and the same act or transaction. See United States Sentencing Guidelines § 3D1.2(a); Presentence Report (PSR) ¶ 15. The Guideline calculation in the Presentence Report places the defendant's total offense level at 34. See PSR ¶ 25. (This calculation contemplates a two level enhancement for the use of a computer to facilitate the offense, and an eight level enhancement because the offense involved a minor of less than twelve years of age.) The PSR calculates the defendant's criminal history score as 0, and his criminal history category as I. See PSR ¶ 28. The Guideline range for the defendant is therefore calculated at 151 to 188 months of imprisonment. See PSR ¶ 62.

III.  **GOVERNMENT'S RECOMMENDATIONS**

For the reasons set forth below, the government respectfully recommends that the Court sentence the defendant to the low end of the applicable Guideline range – specifically, 151 months of imprisonment. This sentence satisfy the requirements set forth in Title 18, United States Code, Section 35553(a).

   A.  Acceptance of Responsibility

The defendant does not accept responsibility for his conduct underlying the charges for which he has been convicted. See PSR ¶ 12.

   B.  Application of the Federal Guidelines post-*Booker*

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 125 S. Ct. at 756.

Nonetheless, and as the Supreme Court stated as recently this Monday, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, _____ U.S. _____, 2007 WL 4292116, at *7 (December 10, 2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). The district court should then consider all of the applicable factors set forth in Title 18 United States Code, Section 3553(a). See id. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide

just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. See United States v. Rita, ___ U.S. ___, 127 S.Ct. 2456 (2007). The Guidelines represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). And the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766-67 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by Section 3553(a)(1). Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be based on the offender's actual conduct and history, and that sentenced be uniform across the country, to the extent possible. See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 ("Congress' basic statutory goal – a system that diminishes sentencing disparity – depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.")

The Guidelines themselves thus seek to implement – in a fair and uniform way – the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in Gall. See Gall, at * 7. It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by the district court. In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for Guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the applicable Guidelines range to 151 months of imprisonment, which will effectuate the requirements set forth in Section 3553(a).

C.    Basis for Government's Sentencing Recommendation

The government is requesting a sentence at the low end of the defendant's Guidelines range. Such a sentence is more than supported by: (1) the facts surrounding defendant's offenses, and (2) the risk of danger to children and the community that the defendant's sexually predatory conduct poses.

The defendant has been convicted of one count of Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), and one count of Traveling with the Intent to Engage in Sex with a Minor, in violation of 18 U.S.C. § 2423(b). The basis for the conduct underlying these convictions stem from the defendant's act of traveling into the District of Columbia from Maryland in order to have unprotected sex with a ten-year-old child.

Despite the fact that the defendant has failed to accept responsibility for his actions in this case, that the defendant was the person who engaged in this conduct is indisputable. Fragments of his chat with the undercover officer were found on the defendant's personal computer. The picture of "K" that the undercover officer sent to the defendant was also found on that same computer. And the defendant, himself, arrived in Washington, D.C., at the prearranged meeting place at the conclusion of the chat, after first researching the Irish Channel Pub and a website giving information on what to do if he was arrested on his computer.

That the defendant's purpose in traveling to the District was to engage in an actual sex act is also indisputable. The best evidence of the defendant's intent is found in the words he chose to use when chatting with the undercover officer. The defendant – when he discovered that the undercover officer allegedly had access to a 10-year-old girl – stated "you can imagine how envious I am," and pressed for additional details about the relationship. A picture of this prepubescent child,

8

clad only in a bathing suit, prompted the response ""Damn, she's sweet." The defendant lobbied for access to the child himself, referencing the fact that he would soon be leaving the area. He pushed for a meeting that very night, because he was horny. And he discussed whether he would need to wear a condom with her, stating "with a young one like that? I'll pass." Forensic analysis of the defendant's computer later established that he had re-accessed the picture of the child as he chatted with the officer about this detail.

Additional evidence of the defendant's intent was found on his computer. During the forensic analysis of the laptop computer, additional images of young girls who appeared to be between the ages of 8 and 13 years old were found. These images – which are innocent in the abstract – take on a much darker meaning when combined with their titles:"9 year old Stephanie Taking off her Bra", "Boom and her Sucker", and "Yes, lick it Boom!".

Finally, the disk of hardcore child pornography found in the defendant's underwear drawer leaves no doubt that he possessed a unique and unusual sexual interest in having sex with children. The images on this disk were exclusively of prepubescent female children ranging in age from approximately three years-old to approximately ten years-old. The videos – which totaled more than 45 minutes of screen time – showed children engaging in oral, anal and vaginal intercourse with adult males. A diaper is clearly visible in the lower front of the screen during one video. Another video depicted men ejaculating on approximately fifteen girls, several of whom appeared to be as young as three to four years of age.

The government submits that the defendant is a danger to children in the community. The defendant appear to possess an unusual sexual preference for small children. As the defendant's online conversation with the undercover officer makes clear, the defendant was no stranger to the

pursuit of illegal child pornography on the internet. In his chat with the undercover officer, he explicitly referenced "photo_island" – a website that was known for supplying hardcore child pornography before it was shutdown. In addition, the defendant mentioned several times during his chat with the undercover officer that he "tended to freak out every now and then and erase his harddrive." Indeed, the government's forensic analysis of his computer confirmed that the defendant had a significant amount of software and bookmarked internet links on his computer to programs that would wipe his harddrive, such as "Kill Disk Harddrive Eraser."

Moreover, during the government's search of his computer, fragments from at least one other online chat with a minor were found. In this chat, which took place on April 1, 2007, the defendant, using the screen name "obfuscate_51" contacted "sassy_lil_girl89" with the comment "erotic pic." The defendant continued to chat with the girl even after he learned that she was under 18. Notably, the defendant sought again to insure that the girl was not "connected to or associated with" groups such as perverted justice. The defendant also asked the girl to send him additional pictures of herself over email. When she declined to do so, the defendant abruptly terminated the exchange.

The defendant also possesses a critical lack of judgement. The government has carefully reviewed the letters submitted to the Court by the defendant's friends and relatives. It is evident that the defendant had a troubled childhood. It is also evident that he is an ambitious, self-motivated, and highly intelligent person who overcame many of these obstacles in order to enroll in and almost complete Medical school. It is thus especially troubling to consider the defendant's criminal decision to travel to the District to engage in unprotected sexual relations with a child who, like the defendant himself, was painted to be the subject of significant abuse. This is especially true in light

of the defendant's choice of future profession – a family practitioner – a position which would have helped him gain access to and the trust of children and their parents.

## IV. CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the defendant to 151 months of imprisonment.

Respectfully submitted,

JEFFERY A . TAYLOR
United States Attorney
Bar No. 498610


/s/
_____
JULIEANNE HIMELSTEIN
Assistant United States Attorney
Federal Major Crimes Section
Mass. Bar No. 417-136
JOCELYN S. BALLANTINE
Assistant United States Attorney
Federal Major Crimes Section
California Bar No. 208-267
555 4th Street, N.W.
Washington, DC 20001
Phone: 514-8203
Fax: 514-6010


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, this 13th day of December 2007.

/s/
_____
JOCELYN BALLANTINE
Assistant United States Attorney